MILLER (BRYDIE v.). See Case No. 2,071.

## Case No. 9,564.

### MILLER v. BROOKLYN LIFE INS. CO.

[2 Bigelow, Ins. Rep. 35.]

Circuit Court, D. Maryland. 1868.[1]

INSURANCE—LIFE—PAYMENT OF PREMIUMS—WAIV-
ER—AUTHORITY TO WAIVE.

1. Acknowledgment of receipt of premium does not estop the company from denying the payment as between the company and the party for whose benefit the policy is executed.

2. Where, in response to an application for insurance, the general agents of the company, without receiving any cash payments, write the insured, inclosing the policy, and saying, "We give you your policy," and inclose blank notes for a portion of the premium, prescribing how they shall be filled out and sent, and, as to the balance,—to be paid in cash, but receipted by them,—say they will call for it at the proper time, this is a waiver of payment, and renders the company liable to pay the insurance, though the insured die without paying the notes or the cash balance. And this is especially so when the cash part, which was to be paid by a third person, is not paid by him upon demand, and the agents then write the insured, "We now depend upon you for it," and subsequently write again, no payment having been made, "We are fearful you will lose your policy if payment is not made soon."

3. Where, in the margin of a life policy, there is a clause to the effect that agents have no authority to waive any of the provisions of it, one of which declared that the policy should be void in case of the non-payment of premiums or of premium notes, when due, *held*, that this did not refer to a premium recited as paid in the policy, but to future premiums.

This was an action by which the plaintiff [Helen A. M. Miller] sought to recover from the defendant $5,000, alleged to have been insured in her name on the life of her late husband, Walter T. H. Miller. There was little or no question as to the facts of the case, which were substantially these: On the 19th of June, 1868, Walter T. H. Miller, then residing in St. Louis, and being engaged in business there with his cousin, Solomon Scott, as his partner, signed an application for a policy of insurance for $5,000 on his life, telling Messrs. Dutcher & Fawcett, the general agents of the company at that point, through whom the application was made, that he was going to Maryland, and, when the policy was received to forward it to him at Reese's Corner, Kent county, Maryland, and to send with it the premium notes, which he would sign and return, and that his partner, Scott, had promised him to pay the cash portion of the premium, the premium being, in all, some $254.85, of which $86.26 was to be in cash; the balance in two notes, at six and twelve months. On July 2, 1868, D. & F., having received the policy from the home office, inclosed it with the premium notes and a statement of the cash due, receipted by them to Miller, saying, "We give you your policy," asking him to return the notes signed, and

[1] [Affirmed in 12 Wall. (79 U. S.) 285.]

stating they will at the proper time, call on Scott for the cash premium. On July 10th, Miller sends them the notes signed; on the 22d July, D. & F. call on Scott for the cash, and he refused payment, and though he admitted having promised his partner, Miller, to pay the amount, says he had never promised them to do so; on July 23d D. & F. write Miller of Scott's refusal to pay, and saying they depend upon him for the cash, with the interest since accrued added; wish to have it in time for their monthly statement of August 1st. The letter was answered on August 3d by Miller, who regretted Scott's failure to pay, and promised to send forward, as requested, in a few days, a draft on New York for the amount due; on August 18th, Miller writes he is shipping some wheat to Baltimore, and will direct Messrs. Cox & Brown of that city to purchase and forward the draft. On September 10th, Dutcher & Fawcett write that they have never received a draft, and say, "Now, sir, we are fearful you will lose your policy, if payment is not made soon." Having heard nothing further from Miller, and learning that he was seriously ill, Dutcher & Fawcett, on October 14th, four days after his death, of which they were, however, then unaware, write to him, returning the premium notes which he had sent them, and pronounced his policy forfeited by the non-payment of the cash premium. Mr. Miller having died on the 10th October, 1868, the friends of Mrs. Miller applied to Mr. Metcalfe, agent of the company in Baltimore, and also to the home office, for blanks on which to make proof of his death. They were refused in both instances, the company declining to recognize the policy. They then procured blanks from another office, and having made the necessary proof, and demanded payment on the policy, which was refused, Mrs. Miller testified that her husband had, in July, 1868, handed her the policy, saying it was a present for her; and that she had never paid any premium on it. Mr. Scott, her husband's partner, testified for the defence that Mr. Dutcher had called upon him for the cash premium about the 20th of July, and that he had refused to pay it. On cross-examination he admitted he had promised Miller to do so, but said that he had not at that time intended buying out his share of their business, which he had subsequently done. When Mr. Dutcher called upon him they had some words, in the course of which Mr. D. said he had charged himself with the cash, in the expectation of getting it from him (Scott), as he had promised to pay it, and had given Miller time on the note premiums. Mr. Scott also identified Miller's letters above referred to. Mr. Fawcett identified copies of those sent to Miller by D. & F., and testified that the cash premium had never been paid or charged to themselves on the books of D. & F. The policy itself which was given in evidence by the plaintiff, recited that it was issued upon the faith of the statements, etc.,

contained in the application of June 19th, and recited also the first premium as "in hand paid." Among the provisos in the policy was one that if the assured "shall not |pay or cause to be paid the premium as aforesaid on or before the day herein mentioned for the payment thereof, or any note or notes which may be given to or received by said company in part payment of any premium, on the day or days when the same shall become due," the policy would become void, etc. On the margin of the policy was the following notice: "Agents of the company are not authorized or permitted to waive, alter, or change any of the provisions of this policy." At the foot of the receipt, which was sent to Miller with the policy, was a memorandum to the effect that "agents must not deliver policies until they are paid for." The printed instructions of the company to its general agents, offered in evidence by the defence, contained directions to the same effect, with the additional notice that if the agents should disregard this rule the premium would be charged to them, and further, providing for the forfeiture of the policies in case of non-payment for thirty days. The president of the company testified that the cash premium had never been received by the company, or charged to Dutcher & Fawcett, they having in their monthly report marked the premium as unpaid.

Stirling & Maund, for plaintiff, contended, first, that the defendant had waived the cash payment, which was a condition precedent to the delivery of the policy, and having trusted to the credit of the deceased, and accepted his premium notes, the policy went into actual operation as a contract of assurance, and could not be forfeited by any subsequent failure of Miller to meet the credit so given. Secondly, that the transaction between the agents and Miller amounted to an actual payment made Dutcher & Fawcett, the creditors of Miller, on the one hand, and debtors of the company, on the other; thirdly, that the policy, having been regularly executed and delivered without any fraud on the part of the plaintiff or her husband, became a valid contract of assurance, and, by the recital on its face of the receipt of the premium, estopped the company from denying that the same was paid, except only so far as to allow the company to enforce a recovery of the money actually unpaid by deduction from the amount due by the company on the policy, or by suit against the party by whom it was payable.

W. S. Bryan, for defendant, contended that the facts showed that Dutcher & Fawcett had delivered the policy only upon the faith of Miller's statement that the cash premium was in Scott's hands, ready for them, and that they had never, then or afterwards, waived its payment, and, even if it should be held that Dutcher & Fawcett had waived the cash payment that, Miller being aware

of the limit of their power as agents, they could not bind the company by their action in so doing.

GILES, District Judge, after taking time to consider, announced the decision, and, taking up the plaintiff's position, in reversed order, ruled that the company was not estopped from denying the payment of the premium by the recital in the policy, and that, though that point was upheld by the authority of Parsons, in his late work on Marine Insurance, the court could not accede to that doctrine, unless in a case where the interests of innocent third parties, who have purchased upon the faith of such a recital, have intervened, which had not happened in this case.

With regard to plaintiff's second point, the court held that there was nothing to show actual payment to the agents, nor any transaction tantamount to a payment. There was, it is true, an order on a party in St. Louis for the money, but there is no evidence of the agents having received that as a payment, nor of their having charged themselves with the money in the account rendered the company on the 1st of August.

With regard to the plaintiff's first position THE COURT held that there was a waiver of the cash payment by the general agents, which bound the company. THE COURT said that the fact that the payment of the cash premium was waived, and the policy delivered and considered as binding, was evident throughout the whole correspondence. In the agents' first letter they say, "We give you your policy," and they inclose the notes for the balance of the premium, prescribing how they shall be filled out and sent, and as to the cash, say it will be called for at the proper time. This was a clear and unquestionable act of waiver. They make no demand upon Scott until the 22d July, and, upon his refusal to pay, write their second letter to Miller, in which they say, "We now depend upon you for it (the cash), to which you must add interest," etc. This letter clearly treated the policy as existing. The third letter does not vary the position; in it they say, "Now, sir, we are fearful you will lose your policy, if payment is not made soon." Now, a man cannot lose what he has never had. Throughout the whole transaction—the giving credit, the taking of a third party for payment, and the coming back upon Miller upon the third party's refusal to pay—there has been a clear waiver of the cash payment, and a delivery and treatment of the policy as a valid executed contract, recognized alike by the agents in St. Louis and the principal in Maryland. From the 2d of July up to the death of Miller, the company could have sued him for the unpaid premium.

THE COURT further held that the general agents had power to waive the payment of the first cash premium. The marginal no-

tice referred to the provisos contained in the policy, and the proviso relied upon referred, not to the first premium, for that was recited in the policy itself as paid, but to the future premiums only, and a failure to pay upon the days therein named. There was no provision in the policy that it shall not become binding until the first premium is paid, and consequently there was no violation of any provision of the policy by the agents when they delivered it as binding before the premium was paid. The memorandum at the foot of the due bill was a mere direction to the agent, and nothing more. The private instructions of the company to its general agents had never been brought to the knowledge of the assured, and had, therefore, nothing to do with this case. It seemed to THE COURT, however, that those very instructions contemplated that a policy might be delivered by the agents without payment of the premium. This is shown by the rule that premiums not paid in such cases will be charged to the agents personally. It appearing, then, that the cash payment was waived by the agent, and that the waiver was within the general scope of the business of the general agents of the company, and the assured not being bound by the secret instructions issued by the company to their agents, THE COURT will enter judgment for the plaintiff for the amount of the policy, less the amount due for premiums, etc. Exceptions reserved by defence. Judgment entered for $5,013.25 and costs.

[This case was taken, on writ of error, to the supreme court, and the judgment of the circuit court was affirmed. 12 Wall. (79 U. S.) 285.]